IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | NO.: |
| | : | |
| MIDDLE RIVER STATION DEVELOPMENT, LLC; ROBERT RITCHIE, JR.; BALTIMORE GAS & ELECTRIC COMPANY, | : | |
| Defendants | : | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through its attorneys, White and Williams, LLP, files this Complaint for Declaratory Judgment against Defendants Middle River Station Development, LLC, Robert Ritchie, Jr., and Baltimore Gas and Electric Company, and in support, alleges as follows:

**I.   INTRODUCTION**

1. This is an insurance coverage declaratory judgment action in which Nautilus seeks a declaration that it has no duty to defend or indemnify its insured, Middle River Station Development, LLC ("Middle River"), or any other defendant hereto, for damages sought by Robert Ritchie, Jr. in the underlying action captioned *Robert Ritchie, Jr. v. Middle Baltimore Gas and Electric Company, et al.*, currently pending in the Circuit Court of Baltimore City, Maryland, Docket No. 24-C-19-004533 (the "Underlying Action").

2. In the Underlying Action, Robert Ritchie, Jr. ("Ritchie") alleges that, on December 21, 2016, he sustained bodily injury (in the form of burns) at a Baltimore Gas & Electric ("BG&E") substation, which was housed in a warehouse owned by Middle River, while in the course of his employment with Global Substation Services ("GSS").

3. A true and correct copy of the Complaint filed in the Underlying Action is attached hereto as Exhibit "B".

4. In the Complaint, Ritchie alleges that he was an employee of GSS, and that GSS was retained by Middle River as a contractor/independent contractor to fix a power outage at a BG&E substation located in the Middle River warehouse.

5. Ritchie's Complaint also avers that GSS was retained by Middle River as an "independent contractor". *See Ex. B,* para. 50.

6. Based upon information that Middle River provided to Nautilus, and the allegations in Ritchie's Complaint against Middle River, Nautilus understands that: (1) Ritchie was an employee of GSS; (2) GSS was either a contractor, subcontractor or independent contractor of Middle River, and; (3) Ritchie alleges that he sustained bodily injury in the course of performing work for GSS on behalf of Middle River.

7. The Nautilus Policy at issue contains an Injury to Employees, Contractors, Volunteers and Other Workers Exclusion ("the L205 Exclusion").

8. The L205 Exclusion bars coverage for, among other things, bodily injury to Middle River's "contractors', subcontractors', or independent contractors' 'employees', 'leased workers', 'temporary workers', 'volunteer workers', statutory 'employees', casual workers, seasonal workers, contractors, subcontractors, or independent contractors," where such injury "aris[es] out of and in the course of" either "[e]mployment by [Middle River]" or "[d]irectly or indirectly performing duties related to the conduct of [Middle River's] business."

9. Based on the allegations in the Underlying Action and the information provided to Nautilus concerning this claim, the L205 exclusion bars all coverage to Middle River for the claims and damages asserted in the Underlying Action.

27664299v.1

10. As explained below, on the date of the accident, Ritchie was working as an employee of either a contractor, subcontractor or independent contractor of Middle River, and Ritchie suffered injuries while either directly or indirectly performing duties related to the conduct of Middle River's business.

11. The L205 Exclusion precludes coverage for any such injury.

12. As set forth below, the Nautilus Policy also contains a Contractors and Subcontractors exclusion and an All Construction Operations exclusion, which also bar coverage.

13. Nautilus has no duty to defend or indemnify its insured, Middle River, for the claims and damages averred in the Underlying Action.

14. Nautilus is thus entitled to a declaration that it has no duty to defend Middle River, or any other Defendant, for any damages sought in the Underlying Action.

15. Nautilus is further entitled to a declaration that it has no duty to indemnify Middle River, or any other Defendant, for any damages and/or judgment assessed against Middle River in connection with the Underlying Action based on the exclusions identified above, and discussed more fully below.

## II.  PARTIES

16. Nautilus Insurance Company is a citizen of Arizona, being a corporation incorporated under the law of the State of Arizona and having its principal place of business at 7233 East Butherus Drive, Scottsdale, AZ, 85260.

17. Middle River Station Development, LLC is a citizen of Maryland, being a limited liability company that is incorporated under the laws of Maryland and having its principal place of business at 233 E. Redwood Street, Baltimore, MD 21202.

18. Further, upon information and belief, none of Middle River's members are citizens of Arizona.

19. Robert Ritchie, Jr. is a natural person and adult individual who is a citizen of Maryland, and who, upon information and belief, resides at 7147 Martell Avenue, Dundalk, MD 21222. As a claimant in the Underlying Action, Ritchie has an interest in this action.

20. Baltimore Gas & Electric Company is a citizen of Maryland being a corporation incorporated under the laws of Maryland and having its principal place of business at 2 Center Plaza, 110 West Fayette Street, Baltimore MD 21201.

21. Further, upon information and belief, none of BG&E's members are citizens of Arizona.

### III.   JURISDICTION

22. This Court has original jurisdiction of this matter pursuant to 28 U.S.C. §1332 because there is complete diversity between the Plaintiff and the Defendants, because the amount in controversy exceeds $75,000, exclusive of interest and costs, because this matter presents a case of actual controversy pursuant to the Declaratory Judgments Act, 28 U.S.C. §2201(a).

23. There is complete diversity of the parties because none of the Defendants is a citizen of Arizona, the state in which Plaintiff Nautilus is a citizen.

24. The amount in controversy exceeds $75,000 because, although declaratory judgment actions do not directly involve the award of monetary damages, "it is well established that the amount in controversy [in such actions] is measured by the value of the object of the litigation." *JTH Tax, Inc. v. Frashier,* 624 F.3d 635, 639 (4th Cir. 2010) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977)).

25. The Fourth Circuit applies the "either-viewpoint" rule in determining the value of the object of the litigation. *In re Microsoft Corp. Antitrust Litig.,* 127 F.Supp.2d 702, 718 (D.Md. 2001). Under the "either-party" rule, the amount-in-controversy requirement is satisfied if either

the gain to the plaintiff or the cost to the defendant is greater than $75,000. *Gonzalez v. Fairgale Properties Co., N.V.*, 241 F. Supp. 2d 512, 517 (D. Md. 2002).

26. Here, the Complaint demands "compensatory damages in excess of seventy-five thousand dollars ($75,000) plus interests and cost" against Middle River. *See* Ex. B, para. 70(d).

27. The Nautilus Policy provides indemnification subject to limits in the amount of $1,000,000 for each occurrence, and $2,000,000 in the aggregate. *See* Ex. A, p. 10.

28. Thus, to the extent Nautilus were to become obligated to indemnify Middle River for damages in the Underlying Action, Ritchie has demanded that such damages exceed $75,000, which number exceeds the jurisdictional limits.

29. This matter presents a case of actual controversy because Middle River seeks a defense and indemnity under the Nautilus Policy in connection with Ritchie's claims against Middle River in the Underlying Action, while Nautilus disputes that it owes Middle River any duty to defend and/or indemnify Middle River under the Nautilus Policy against the Underlying Action.

**IV.   VENUE**

30. Venue is proper in the United States District Court for the District of Maryland, pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), because Defendants Middle River, Ritchie, and BG&E are deemed to reside in Maryland, and because a substantial part of the events giving rise to the claims against Middle River occurred in the District of Maryland.

31. Middle River is deemed to reside in this District because it is an entity with the capacity to sue and be sued in its common name under applicable law, and Middle River is subject to the Court's personal jurisdiction with respect to the civil action in question. 28 U.S.C. §1391(c)(2).

32.     A substantial part of the events or omissions giving rise to the claims against Middle River occurred in the District of Maryland because the Underlying Action, out of which this action arises, was based in this District (Circuit Court for Baltimore County), and the damages for which Middle River seeks insurance coverage took place in Baltimore County.

## V.     FACTUAL BACKGROUND

### A.     The Nautilus Policy

33.     Nautilus Insurance Company issued a commercial general liability policy, Policy No. NN704006, to its named insured Middle River Station Development, LLC (the "Nautilus Policy").

34.     A true and correct copy of the Nautilus Policy is attached as Exhibit "A" hereto.

35.     The policy period for the Nautilus Policy is July 3, 2016 to July 3, 2017.  *See* Ex. A, p. 2.

36.     The Nautilus Policy provides certain Commercial General Liability ("CGL") coverage subject to a $1 million each occurrence limit, a $2 million general aggregate limit, a $2 million products/completed operations aggregate limit, and a $5,000 medical expense limit. *See* Ex. A, p. 10.

37.     The Nautilus Policy's Insuring Agreement, contained in the Policy's "Commercial General Liability Coverage Form" (CG 00 01 04 13), states in part as follows:

> SECTION I - COVERAGES
>
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> **1. Insuring Agreement**
>
> > **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those

    damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

    (1)    The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

    (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

**b.** This insurance applies to "bodily injury" or "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph 1. Of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

*See* Ex. A, p. 11.

38. The Nautilus Policy contains the following Definitions, among others:

    SECTION V – DEFINITIONS

-7-

\* \* \*

3. "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\* \* \*

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

*See* Ex. A, pp. 22-25.

39. The Nautilus Policy's CGL Coverage Part contains an exclusion entitled "Injury to Employees, Contractors, Volunteers and Other Workers Exclusion" ("the L205 Exclusion"), which replaces the Employer's Liability exclusion in the body of the CGL Coverage Part with the following:

**A.   Exclusion e. Employers Liability of 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:**

This insurance does not apply to:

**e.**   Injury to Employees, Contractors, Volunteers and Other Workers
"Bodily injury" to:

**(1)**   "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or

**(2)**   Any insured's contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees",

-8-

      casual workers, seasonal workers, contractors, subcontractors, or independent contractors

    arising out of and in the course of:

      **(a)**  Employment by any insured; or

      **(b)**  Directly or indirectly performing duties related to the conduct of any insured's business; or

  **(3)**  The spouse, child, parent, brother or sister of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, seasonal worker, contractor, subcontractors, or independent contractor arising out of Paragraph (1) or (2) above.

  This exclusion applies:

  **(1)**  Regardless of where the:

    **(a)**  Services are performed; or

    **(b)**  "Bodily injury" occurs; and

  **(2)**  Whether any insured may be liable as an employer or in any other capacity; and

  **(3)**  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

*See* Ex. A, p. 36.

    40.  The Nautilus Policy also contains a "Contractors and Subcontractors" exclusion endorsement, which precludes coverage for claims arising out of work performed by any contractor. Specifically, that exclusion provides:

> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work.

*See* Ex. A, p. 42.

41. The Nautilus Policy also contains an endorsement entitled Exclusion – All Construction Operations, that adds the following exclusion:

> This insurance does not apply to:
>
> 1. "Bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any "construction operations" performed by you or on your behalf.
>
> 2. Costs and expenses to investigate or defend any claim, "suit" or payment of any fine or penalty for paragraph **A.1.** above.
>
> B. This exclusion applies to:
>
> 1. "Bodily injury", "property damage", "personal and advertising Injury" and medical payments for which any insured may be obligated to pay damages by reason of the assumption of liability in any contract or agreement, regardless of whether such contract or agreement is an "insured contract"; or
>
> 2. Any obligation to share damages with or repay someone else who must pay damages.
>
> C. The following definitions are **added** to the **Definitions** section:
>
> 1. "Construction" means the act of building by putting together materials and parts to create a structure including, but not limited to, building the foundations, framework, floors, walls, ceilings, trusses or roof, or debris removal.
>
> 2. "Construction operations" means, with respect to real property, surveying, site preparation, grading of land, excavation, debris removal, soil compaction, tree clearing, demolition, reconstruction, renovation, alteration, remodeling, repair, service, improvement and any other "pre-construction" and any other "construction" and any other "post-construction".
>
> 3. "Post-construction" means those activities that occur after the issuance of the notice of completion or certificate of occupancy, whichever comes first.
>
> 4. "Pre-construction" means those activities that must occur prior to the actual start of the "construction" process including, but not limited to, grading of land, inspection, land surveying, site preparation, soil compaction, tree clearing or installation of driveways, parking areas, roads, sidewalks, and utilities.

*See* Ex. A, p. 43.

### B.     The Underlying Action

42.    On or about August 28, 2019, Ritchie filed suit in the Circuit Court for Baltimore County, Maryland, against Middle River and BG&E.

43.    In the Underlying Action, Ritchie alleges that he was "an employee of [Middle River's] independent contractor, GSS" and was thus an "invitee" on Middle River's property. Ex. B, para. 50.

44.    The Complaint alleges that on December 21, 2016, Middle River's "property maintenance man," asked GSS to come restore power to a Middle River warehouse located at 2800 Eastern Boulevard. Ex. B, para. 10.

45.    GSS then dispatched Ritchie and his supervisor to the scene. Ex. B, para. 10.

46.    Ritchie's task involved replacing parts in the BG&E Substation switchgear Cubicle #9, which required borrowing spare parts from the adjacent switchgear Cubicle #10, which was not in service. *See* Ex. B, para. 12.

47.    While working on certain substation equipment, owned by BG&E and housed at the warehouse, Ritchie suffered "severe and permanent injuries." In particular, Ritchie alleges the switchgear on Cubicle #10 was defective, causing Ritchie to be electrocuted by 7,600 volts of electricity. Ex. B, paras. 11-15.

48.    The Underlying Action sets forth causes of action against Middle River for premises liability, breach of duty to provide a safe workplace, negligence in the selection of contractor, failure to take precautions against dangers involved in work entrusted to a subcontractor, and vicarious liability. *See* Ex B., Counts IV, V, VI, VII, and VIII.

49.    In Count IV, Premises Liability, Ritchie alleges that, as an "employee of [Middle River's] independent contractor GSS," Ritchie was an "invitee on the landowner [Middle River's]

property." As such, Middle River allegedly owed – and breached – its duty to keep its property in a safe condition for those lawfully using the premises, resulting in injuries to Ritchie. *See* Ex. B, paras. 50, 51, 55, 56.

50. In Count V, Breach of Duty to Provide a Safe Workplace, Ritchie alleges that Middle River "employed GSS as an independent contractor to restore a partial power outage at the warehouse." Ex. B, para. 59.

51. Ritchie alleges that Middle River was obligated to regularly inspect the equipment at the warehouse, and that its failure to do so caused Ritchie to suffer severe and permanent injuries. *See* Ex. B, paras. 63-65.

52. In Count VI, Negligence in Selection of Contractor, Ritchie alleges that Middle River employed Julio Adrian Vera ("Vera") as an independent contractor responsible for overseeing issues related to its high voltage facility." Ex. B, para. 68.

53. However, Ritchie alleges that, in employing Vera, Middle River failed to employ a contractor who knew to arrange for regular inspections of the high voltage electrical facility. Ritchie alleges that this failure led him to suffer severe and permanent injuries. *See* Ex. B, paras. 68-69.

54. In Count VII, Liability for Failing to Provide for Taking of Precautions of Dangers Involved in Work Entrusted to Independent Contractor, Ritchie alleges that Middle River "employed GSS, an independent contractor, to do work on its electrical equipment," which Middle River knew or should have known would be likely to create a risk of harm to Ritchie. Ritchie further alleges that the risk was one that Middle River "should have recognized as likely to arise in the course of the ordinary and usual method of doing the work that [Middle River] hired GSS

to do," and that Middle River "cannot shift to any independent contractor the responsibility for not taking precautions against [the risk]." *See* Ex. B, para. 72.

55. Finally, in Count VIII, vicarious liability, Ritchie alleges that Middle River is vicariously liable for Vera's negligent failure to take appropriate precautions, which failure resulted in severe and permanent injuries to Ritchie. *See* Ex. B, paras. 78-80.

### C. **Nautilus' Coverage Determination**

56. Nautilus initially received notice of the incident involving Ritchie on December 21, 2016. After investigating the incident, Nautilus issued a letter to Middle River on January 4, 2017, in which Nautilus reserved all rights to disclaim coverage.

57. A true and correct copy of the January 4, 2017 letter is attached hereto as Exhibit "C".

58. In the January 4, 2017 letter, Nautilus stated that it believed that GSS was an independent contractor of Middle River, and explained that none of the documents provided to Nautilus disputed that conclusion. *See* Ex. C.

59. By letter dated November 14, 2017, Nautilus denied coverage (prior to the filing of the Underlying Action) for Ritchie's claims, on the basis that both the L205 Exclusion and the Contractors and Subcontractors Exclusion served as bars to coverage.

60. A true and correct copy of the November 14, 2017 letter is attached hereto as Exhibit "D".

61. On August 28, 2019, Ritchie filed the Complaint in the Circuit Court of Baltimore County, Maryland. *See* Ex. B.

62. After review of the Complaint and the Nautilus Policy, on October 7, 2019 Nautilus issued a declination of coverage letter to Middle River, explaining that Nautilus would not be

providing a defense or indemnity to Middle River, and advising Middle River that it should retain its own counsel to represent it in the Underlying Action.

63. A true and correct copy of the October 7, 2019 letter is attached hereto as Exhibit "E".

64. On March 18, 2021 Ritchie filed a Request for Order of Default in the Underlying Action seeking a default against Middle River due to Middle River's failure to answer the Complaint or participate in discovery in the Underlying Action.

65. A true and correct copy of the Request for Order of Default is attached hereto as Exhibit "F".

66. On April 23, 2021, Nautilus sent a letter in response to Ritchie's Request for Order of Default, in which Nautilus reaffirmed its coverage denial to Middle River.

67. A true and correct copy of the April 23, 2021 letter is attached hereto as Exhibit "G".

68. On June 17, 2021, Ritchie filed a Motion Seeking Entry of a Default Judgment against Middle River.

69. A true and correct copy of the Motion Seeking Entry of a Default Judgment is attached hereto as Exhibit "H".

70. Pursuant to that Motion, Ritchie sought entry of judgment against Middle River in the amount of $8,009,766.731 [sic] for Ritchie's alleged injuries. *See* Ex. H.

71. In response to that Motion, Nautilus sent another letter to Middle River on August 5, 2021, in which Nautilus again reaffirmed its coverage denial.

72. A true and correct copy of the August 5, 2021 letter is attached hereto as Exhibit "I".

73.     Nautilus has repeatedly written to Middle River explaining the bases for Nautilus' denial of coverage and inviting Middle River to advise as to whether it has any grounds for disagreeing with Nautilus' coverage determination.  To date, Nautilus has not received any response from Middle River.

### COUNT ONE

### DECLARATORY JUDGMENT – NAUTILUS HAS NO DUTY TO DEFEND AND/OR INDEMNIFY MIDDLE RIVER IN THE UNDERLYING ACTION

74.     Nautilus incorporates by reference all of the foregoing allegations as though the same were set forth herein.

75.     Pursuant to the DECLARATORY JUDGMENTS ACT, 28 U.S.C. § 2201, Nautilus is entitled to a judicial determination concerning the parties' rights and obligations, if any, under the Nautilus Policy in connection with the Underlying Action.

76.     Nautilus has no duty under the Nautilus Policy to defend or indemnify Middle River in the Underlying Action.

77.     The Nautilus Policy provides certain coverage for "bodily injury" caused by an "occurrence;" however, coverage is subject to one or more exclusions and limitations, as set forth above.  Such exclusions include the L205 Exclusion, the Contractors and Subcontractors exclusion, and the All Construction Operations exclusion.

78.     Under the Nautilus Policy's L205 Exclusion, coverage is precluded for, among other things, bodily injury to Middle River's "contractors', subcontractors', or independent contractors' 'employees', 'leased workers', 'temporary workers', 'volunteer workers', statutory 'employees', casual workers, seasonal workers, contractors, subcontractors, or independent contractors," where such injury "aris[es] out of and in the course of" either "[e]mployment by

[Middle River]" or "[d]irectly or indirectly performing duties related to the conduct of [Middle River's] business."

79. Based on the allegations in the Underlying Action, coverage for Ritchie's damages is excluded by the L205 Exclusion.

80. The Underlying Action avers that Ritchie, as an "employee of [Middle River's] independent contractor GSS," was an "invitee on the landowner [Middle River's] property." *See* Ex. B, para. 50.

81. Among other things, the Underlying Action alleges that, at the time he sustained bodily injuries, Ritchie was engaged in the course of his employment as an electrician laborer for GSS, which Middle River hired as an independent contractor. *See* Ex. B, para. 11, 50.

82. Ritchie further claims that he sustained bodily injuries while repairing a substation at Middle River's request. *See* Ex. B, para. 10 (alleging that Middle River's maintenance man called GSS to report a power outage and asked GSS to come restore power).

83. Ritchie thus alleges that he was an employee of Middle River's contractor/independent contractor, who allegedly sustained "bodily injury" in the course and scope of performing work for GSS on behalf of Middle River.

84. As such, the Underlying Action seeks damages for injuries to the employee of Middle River's contractor or independent contractor, arising out of and in the course of that employee's performance of duties related to the conduct of Middle River's business.

85. The L205 Exclusion precludes coverage for such damages.

86. The Nautilus Policy also contains a Contractors and Subcontractors exclusion, discussed above.

87. The Underlying Action alleges that Ritchie sustained bodily injury as part of his work with GSS at the Middle River warehouse. *See* Ex. B, paras. 10-15.

88. It is further alleged that GSS was retained by Middle River as a contractor to perform electrical work at Middle River's warehouse. *See* Ex. B, paras. 10 and 47 (noting that Middle River asked GSS to come restore power); *see also* Ex. B, para. 32 (noting that Ritchie was an invitee on Middle River's property).

89. As such, the Underlying Action seeks damages for "bodily injury" arising out of work performed by a contractor.

90. The Contractors and Subcontractors precludes coverage for such damages.

91. The Nautilus Policy also contains an All Construction Operations exclusion, discussed above.

92. Ritchie alleges in the Underlying Action that he suffered bodily injury arising out of his electrical work to restore power at the Middle River warehouse. *See, e.g.*, Ex. B, paras. 46-55.

93. As set forth in the Complaint, Ritchie was working on the BG&E Substation switchgear – replacing parts, which in turn required borrowing parts from another switchgear that was not in service. *See* Ex. B, paras. 10-12.

94. Ritchie claims that he was an employee of Middle River's independent contractor, GSS, and was furnishing services on behalf of Middle River when he was injured. *See* Ex. B, paras. 23, 50.

95. Ritchie also avers that the "purpose of the December 21 service visit was to restore power by replacing parts in the [Middle River] electrical system's Cubicle #9." Ex. B, para. 48.

27664299v.1

96. The Underlying Action thus seeks damages for bodily injury arising out of any construction operations – defined, in part as repair or service – performed on Middle River's behalf.

97. Such damages are precluded pursuant to the Nautilus Policy's All Construction Operations exclusion.

98. For the above reasons, Nautilus has no potential or possible liability under the Nautilus Policy based upon the allegations set forth in the Underlying Action.

99. Because there is no potential or possible liability under the Nautilus Policy, Nautilus has no duty to defend or indemnify Middle River in the Underlying Action.

**WHEREFORE,** Nautilus respectfully requests that this Court enter an Order:

(a) Declaring that, under the Nautilus Policy, Nautilus has no duty to defend or indemnify Middle River in the Underlying Action or any appeal thereof; and

(b) Declaring and granting such other and further relief as may be necessary and appropriate under the circumstances, including all other relief available at law or in equity to which Nautilus may be entitled and which this Court deems just and proper.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

Dated: August 30, 2021         BY:         */s/ William J. Taylor, Esq.*
William J. Taylor, Esq.
One Liberty Place
1650 Market Street, Suite 1800
Philadelphia, PA 19103-7395
*Attorney for Plaintiff*
*Nautilus Insurance Company*